PEOPLE v WILLIAMS

Docket No. 77-3327. Submitted August 31, 1978, at Detroit.—Decided October 5, 1978.

Randall B. Williams was convicted of manslaughter, Recorder's Court of Detroit, Patricia J. Boyle, J. Defendant appealed, alleging error in the admission of evidence of a prior misdemeanor conviction to refute the defendant's testimony that he had never been convicted of any offense, the admission of a written statement of the defendant inconsistent with his testimony, the court's instructions to the jury, and the failure to grant a mistrial when the prosecutor requested, during trial, that the defendant be fingerprinted. *Held:*

1. The use of the misdemeanor conviction to impeach the defendant would ordinarily be improper, but in this case it was used for the specific purpose of negating the defendant's false testimony regarding prior convictions and defense counsel's statement that the defendant had an "unblemished record". The evidence was properly admitted.

2. A proper foundation was laid for admission of the prior inconsistent statement, and its admission was proper.

3. The jury instruction complained of was not objected to, and no manifest injustice resulted.

4. Failure to grant a mistrial was not error where no showing of prejudice to the defendant was made.

Affirmed.

N. J. Kaufman, P.J., concurred separately to express his agreement with the majority that the evidence of the defendant's prior misdemeanor conviction was properly admitted to negate the testimony of the defendant, which was false and, therefore, perjury.

---

References for Points in Headnotes

[1, 5] 81 Am Jur 2d, Witnesses §§ 480, 571-586.
[2] 81 Am Jur 2d, Witnesses § 596 *et seq.*
[3] 58 Am Jur 2d, New Trial § 128.
[4] 58 Am Jur 2d, New Trial §§ 29, 31, 33-41.

OPINION OF THE COURT

1. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — MISDEMEAN-
   ORS — PERJURY.

   Introduction into evidence of the fact that a defendant had
   previously been convicted of a misdemeanor, ordinarily inad-
   missible for purposes of impeachment of a defendant, is proper
   where the defendant has asserted that he has no prior convic-
   tions and the evidence is offered specifically to negate the
   defendant's false testimony.

2. CRIMINAL LAW — EVIDENCE — PRIOR INCONSISTENT STATEMENTS —
   FOUNDATION.

   The guidelines for properly laying a foundation for introduction
   into evidence of a witness's prior written statement which is
   inconsistent with his testimony are: the witness is to be shown
   the document, and asked whether he made the alleged state-
   ment, giving its substance and naming the time, the place and
   the person to whom the statement was made; if the witness
   denies making the statement or indicates a lack of knowledge
   of the statement, a proper foundation has been laid for the
   cross-examiner to prove the making of the statement.

3. CRIMINAL LAW — INSTRUCTIONS TO JURY — MISCARRIAGE OF JUS-
   TICE.

   Reversal of a defendant's conviction on the basis of an allegedly
   erroneous jury instruction which was not objected to at trial is
   not warranted in the absence of a miscarriage of justice.

4. CRIMINAL LAW — MISTRIAL — NEW TRIAL — PREJUDICE.

   The granting of a mistrial or a new trial is justified only where it
   is clearly established that an irregularity in a trial resulted in
   prejudice sufficient to deprive the defendant of a fair and
   impartial trial.

CONCURRENCE BY N. J. KAUFMAN, P.J.

5. CRIMINAL LAW — EVIDENCE — PRIOR CONVICTIONS — MISDEMEAN-
   ORS — PERJURY.

   *Evidence of a defendant's prior misdemeanor conviction was
   admissible for the purpose of negating the defendant's false
   testimony that he had no previous convictions.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor, General *William L. Cahalan,*
Prosecuting Attorney, *Edward R. Wilson,* Principal

Attorney, Appeals, and *Frank J. Bernacki,* Assistant Prosecuting Attorney, for the people.

*Matthew R. Rumora,* for defendant on appeal.

Before: N. J. KAUFMAN, P.J., and R. M. MAHER and D. C. RILEY, JJ.

D. C. RILEY, J. On February 4, 1977, defendant was convicted by a jury of manslaughter, MCL 750.321; MSA 28.553, and sentenced to a prison term of 5 to 15 years.

He assigns as error four trial court rulings, of which the most significant pertains to an admission of a prior misdemeanor conviction for impeachment purposes. In his opening statement, defense counsel stated his client had "an unblemished record". On direct examination defendant testified that he had never been convicted of any offense, and on cross-examination he again denied any convictions. Subsequently, the prosecution produced a witness, officer Robert Black, who testified that defendant had previously been convicted of the misdemeanor of larceny under $100, MCL 750.356; MSA 28.588. Defendant argues that allowing the misdemeanor conviction into evidence directly contravenes *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974). *Renno* held that prior municipal ordinance or misdemeanor convictions are inadmissible at trial if intended solely for impeachment purposes. Defendant Renno, on direct examination, testified that he had previously been convicted of certain drunk and disorderly charges. On cross-examination the prosecutor repeatedly attempted to expose the underlying factual circumstances behind those charges. In construing two statutes bearing on the propriety of impeach-

ing a witness by prior conviction, the Court declared that:

"The original legislative purpose behind these statutes is obvious. They were passed to allow persons, historically disqualified at common law from testifying in a case, to testify. A compromise, however, was worked out whereby these disqualified persons could still have their credibility attacked by those prior convictions *which formerly had disqualified them from testifying.*

"Not all crimes at common law disqualified a witness. Only *infamous* crimes disqualified a witness, and our statutes were originally intended only to allow impeachment by use of that type of criminal conviction.

\* \* \*

"Defendant in this case was impeached by the prosecutor's use of his prior municipal ordinance violations and convictions. As set forth in *[People v] Hanrahan, supra,* [75 Mich 611, 620-621; 42 NW 1124 (1889)], and *[Ex parte] Wilson, supra,* [114 US 417; 5 S Ct 935; 29 L Ed 89 (1885)] these are not the type of crimes which historically would have disqualified a witness from testifying. Our Legislature saw fit to pass these statutes and to confer upon the accused a right he previously did not have at common law, that of testifying on his own behalf. The Legislature also saw fit to limit this right, permitting the defendant's credibility to be attacked in the discretion of the trial court by these prior disqualifying convictions. These statutes were passed to give rights to an accused defendant, not to take rights away· from him. Allowing the use of municipal ordinance convictions for impeachment purposes does just that—it takes away rights the accused formerly had at common law." (Emphasis in original.) *Renno, supra,* at 53, 55*.*

Thus, it is apparent from the above excerpt that the *Renno* Court was concerned primarily with the general "bad character" of the witness as it pertained to his ability to testify before a jury in a

credible manner. The witness was allowed to take the stand, but, at the same time, the jury was permitted to evaluate his communicative reliability through the admission of crimes serious enough (*i.e.,* infamous crimes) to warrant certain inferences as to his overall character.

We deal here with a dissimilar situation, namely, the correction of false and perjured testimony. The misdemeanor conviction was not offered for the purpose mentioned in *Renno,* but rather to negate defendant's express contention on direct examination that he was never before convicted.

Although no Michigan cases deal with this exact issue, reference to other analogous decisions is instructive. In *People v Bouchee,* 62 Mich App 132; 233 NW2d 503 (1975), *rev'd on other grounds,* 400 Mich 253; 253 NW2d 626 (1977), defense counsel in his opening statement vouched for the defendant's nonexistent criminal record; defendant further testified as much on direct examination, whereupon the prosecution introduced evidence of a prior military conviction which was defective for lack of counsel. See *Loper v Beto,* 405 US 473, 480; 92 S Ct 1014; 31 L Ed 2d 374 (1972). The *Bouchee* Court determined that reference to the prior conviction was not permitted for the general purpose of denigrating defendant's character, but rather was admissible for the special and narrow purpose of demonstrating that defendant had given false testimony on direct examination.

"We believe that the record reflects that the defendant offered false testimony and that the prosecutor was allowed to show that defendant misrepresented his record in an attempt to mislead the jury. The defendant's testimony opened the door to rebuttal testimony, or what McCormick calls 'fighting fire with fire'. Mc-

Cormick, Evidence (2d ed), § 57, pp 131, 132." *Bouchee,
supra,* at 136.

See *People v Jackson,* 77 Mich App 392; 258 NW2d
89 (1977), *People v Eroh,* 47 Mich App 669; 209
NW2d 832 (1973). *Cf., People v Bobo,* 390 Mich
355; 212 NW2d 190 (1973).

While *Bouchee* did not reach the question of
prior misdemeanor convictions, its reasoning
touches the present case. For the trial court to
have excluded the prior larceny conviction would
allow the defendant to hide behind the purport-
edly expansive shield of *Renno,* thereby granting
him free license to commit perjury and mislead
the jury. This we cannot sanction, nor do we feel
the *Renno* Court intended such a dubious result.

The United States Supreme Court in *Harris v
New York,* 401 US 222, 225-226; 91 S Ct 643; 28 L
Ed 2d 1 (1971), addressed an analogous issue con-
cerning the use for impeachment of an otherwise
inadmissible confession which violated *Miranda v
Arizona:*[1]

"Every criminal defendant is privileged to testify in
his own defense, or to refuse to do so. But that privilege
cannot be construed to include the right to commit
perjury. * * * Having voluntarily taken the stand,
petitioner was under an obligation to speak truthfully
and accurately, and the prosecution here did no more
than utilize the traditional truth-testing devices of the
adversary process. * * *

"The shield provided by *Miranda* cannot be perverted
into a license to use perjury by way of a defense, free
from the risk of confrontation with prior inconsistent
utterances. We hold, therefore, that petitioner's credi-
bility was appropriately impeached by use of his earlier
conflicting statements." (Citations omitted.)

[1] 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966).

Our Supreme Court in *People v Graham,* 386 Mich 452; 192 NW2d 255 (1971), adopted the *Harris* rationale in affirming a conviction where the defendant had been impeached by evidence of his prior silence during a police interrogation. At trial he testified on direct examination that he repeatedly tried to inform the police what had happened. The Court cautioned, however, that the "defendant's refusal to speak during interrogation is admissible only to impeach his own inconsistent statements at trial". *Graham, supra* at 458.

These decisions illustrate that when a defendant seeks to controvert the truth-seeking functions of a criminal trial, the introduction of otherwise inadmissible evidence is permissible to contradict his false testimony. Accordingly, we hold that since the introduction of the prior misdemeanor conviction in the present case was not used to show the defendant's bad character, but was rather used specifically to negate his fraudulent testimony, and the jury was so instructed, its introduction was not reversible error.

The remaining issues on appeal may be disposed of more readily. First, the prosecution in rebuttal introduced a prior written statement of the defendant contrary to his previous in-court testimony. Defendant argues that no proper foundation was laid for its introduction.

*People v Dozier,* 22 Mich App 528, 531-532; 177 NW2d 694 (1970), enunciated the following guidelines:

" 'To satisfy the requirement the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place and the person to whom made. The purpose of this particularity is, of course, to refresh the memory of the

witness as to the supposed statement by reminding him of the accompanying circumstances.

" 'If the witness denies the making of the statement, or fails to admit it, but says "I don't know" or "I don't remember" then the requirement of "laying the foundation" is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement.' McCormick, Handbook of the Law of Evidence (1954), § 37, p 68."

Further, when impeaching by a witness's prior inconsistent statement, the witness must be shown the document. *People v Martin,* 75 Mich App 6, 16; 254 NW2d 628 (1977). A perusal of the record convinces us these requirements were complied with in the instant case. Whether the defendant fully denied or failed to admit the statement is the subject of equivocal and contradictory testimony. The trial court determined the thrust of the defendant's testimony was that the entire statement was either untrue or that he did not recall having made the statement. Since we cannot say we might have reached a different result there is no showing of an abuse of discretion.

Defendant also asserts the trial court's instruction on self-defense was improper. Counsel did not object at trial to the self-defense charge, therefore, absent a miscarriage of justice, reversal is not warranted. MCL 769.26; MSA 28.1096, GCR 1963, 516.2, *People v Trammell,* 70 Mich App 351; 247 NW2d 311 (1976), *People v Spaulding,* 42 Mich App 492; 202 NW2d 450 (1972). We cannot say that manifest injustice occurred. Although irregular in part, the instruction fairly informed the jury as to the applicable law on self-defense.

Finally, defendant argues the trial court erred in failing to grant a motion for mistrial after the prosecutor had requested, in the presence of the

jury, that the defendant be fingerprinted. Not every irregularity in a trial justifies the granting of a mistrial or new trial but only where it is clearly established that the error resulted in prejudice sufficient to deprive the defendant of a fair and impartial trial. *People v Nick,* 360 Mich 219; 103 NW2d 435 (1960), *People v Watson,* 307 Mich 596; 12 NW2d 476 (1943), *cert den,* 323 US 749; 65 S Ct 81; 89 L Ed 600 (1944). No actual showing of prejudice was made here. The lower court's instructions that the prosecution's testimony was not evidence and that any reference to fingerprinting should be disregarded served further to eliminate any possible bias. *People v Boxx,* 16 Mich App 724; 168 NW2d 628 (1969).

Affirmed.

R. M. MAHER, J., concurred.

N. J. KAUFMAN, P.J. *(concurring).* I concur separately for the simple reason that I cannot find anything wrong with the well-written opinion of Judge RILEY.

My difficulty is that I do not know why defense counsel stated that defendant had an unblemished record. If I were to guess I would say he did it because he knew of *People v Renno,* 392 Mich 45; 219 NW2d 422 (1974), and knew that if his client took the witness stand he could not be questioned in regard to misdemeanor or ordinance violations.

I also do not know why the defendant answered the prosecutor's question as to previous convictions by stating that he had never been convicted of *any* offense. It could have been for two reasons: (1) that he heard his counsel say he had an unblemished record and (2) that his counsel had already told him he could not be questioned as to misdemeanor and/or ordinance convictions.

Nevertheless, it was perjury. Therefore, I affirm.