PEOPLE v MOORE

1. DRUGS AND NARCOTICS—CONTROLLED SUBSTANCES—USE—CRIMINAL
   OFFENSE—STATUTES.
   The knowing and unauthorized use of a controlled substance is a
   criminal offense in this state (MCLA 335.341[5]; MSA
   18.1070[41] [5]).

2. CRIMINAL LAW—ENTRAPMENT—CRIMINAL CONDUCT BY INVESTIGAT-
   ING OFFICERS—CAUSAL CONNECTION—INDUCEMENT OF CRIMINAL
   CONDUCT.
   A police officer's actions in the course of investigating or appre-
   hending a criminal defendant which amount to the commission
   of a crime do not constitute entrapment where no causal
   connection can be found between the acts of the officer and
   those of the defendant that could be properly characterized as
   inducement or incitement.

3. CRIMINAL LAW—ENTRAPMENT—INTOLERABLE POLICE CONDUCT—IN-
   DUCEMENT OF CRIMINAL CONDUCT.
   The defense of entrapment consists of: (1) intolerable police
   conduct that (2) induces or instigates the commission of a
   crime.

Appeal from Oakland, Frederick C. Ziem, J.
Submitted November 5, 1976, at Lansing. (Docket
No. 25875.) Decided February 2, 1977.

Joseph L. Moore was convicted of delivery of
phencyclidine. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *L. Brooks Patterson,*
Prosecuting Attorney, *Robert C. Williams,* Chief

REFERENCES FOR POINTS IN HEADNOTES
[1] 25 Am Jur 2d, Drugs, Narcotics, and Poisons §§ 16, 17.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 143–145.

Appellate Counsel, and *Thomas C. Richards,* Assistant Prosecuting Attorney, for the people.

*Hampton, Snavely, Ranno, Lightbody & Girard,* for defendant.

Before: DANHOF, C. J., and M. J. KELLY and D. E. HOLBROOK, JR., JJ.

DANHOF, C. J. The defendant was convicted of delivery of a controlled substance, phencyclidine, in violation of MCLA 335.341(1)(b); MSA 18.1070(41)(1)(b). He was sentenced to serve a term of imprisonment from one to seven years and appeals as of right.

Before trial, defendant timely raised the issue of whether police conduct in the investigation of this case amounted to entrapment as a matter of law. The trial court ruled that it did not and the defendant was obliged to stand trial on the merits. Defendant now seeks review of the trial court's findings in the matter of entrapment.

Precisely, the issue is: If in the course of investigating or apprehending a criminal defendant, a police officer's actions amount to the commission of a crime, under the objective test of entrapment set forth in *People v Turner,*[1] has the defense of entrapment necessarily been established as a matter of law? We conclude that the answer is "no".

The salient facts are not in dispute. On January 7, 1975, police officer Robert Blank was first introduced to the defendant at the defendant's home. Blank recounted what happened at trial:

*"Q. [By Mr. Corbett, Assistant Prosecuting Attorney]* And for what purpose did you go to Mr. Moore's house on January the 7th, 1975?

[1] 390 Mich 7; 210 NW2d 336 (1973).

"*A. [Officer Blank]* We were to buy some hash oil.

"*Q.* And what, if anything, transpired between you and Mr. Moore, after you entered the home on January 7, 1975?

"*A.* We came in, sat down in the living room. Mr. Moore produced a small glass tube with a brown sticky substance in the bottom of it.

"*Q.* Had you ever seen an item like this before?

"*A.* I had never seen what is referred to as a hash oil pipe.

"*Q.* Did you have occasion to inquire of Mr. Moore as to what this item was?

"*A.* Yes, I asked him. I had never seen it before. I had told him the other times, it had just been spread over a joint, or something like that. I had never seen a pipe like this before.

"*Q.* What, if anything, did Mr. Moore say to you when you informed him you had never seen a device like it before?

"*A.* He showed me how to use it, put it in my mouth and took a lighter and lit the bottom bowl, of the pipe which caused the oil to light up, and smoke.

"*Q.* What, if anything, did you do after he lit the bottom bowl?

"*A.* I then passed the pipe to some other person there.

"*Q.* Did you have occasion to inhale the contents that came through the tubing?

"*A.* Yes, I did.

"*Q.* To whom did you pass the pipe?

"*A.* I believe I passed it to Patrolman Gidner.

"*Q.* What, if anything, did Patrolman Gidner do that you observed?

"*A.* I believe he passed it to another person that was there, I'm not exactly sure. There was *[sic]* two people in and out of that room, at that time, either Mr. Moore's roommate or Mr. Moore's roommate's girl-friend.

"*Q.* Did you have occasion to see what Officer Gidner did?

"*A.* I believe he smoked it while Mr. Moore was there."

Having gained the defendant's confidence at this first meeting, Blank arranged to purchase, on January 10th, some "hash oil" and 1,000 tablets which proved to be phencyclidine when tested. The defendant was then arrested and charged.

The knowing and unauthorized use of a controlled substance is a criminal offense in this state. MCLA 335.341(5); MSA 18.1070(41)(5). Defendant argues such actions cannot be tolerated, that they are repugnant to the state and to the objective test of entrapment adopted in *Turner, supra.*

*Turner,* however, does not stand for the proposition that in every instance where a police officer acts in an unlawful manner, the criminal must be freed. The sanction is imposed only where police conduct " 'is of a kind that could *induce* or *instigate* the commission of a crime by one not ready and willing to commit it' ". (Citation omitted.) (Emphasis added.) *Turner, supra,* at 21. Thus, the defense of entrapment consists of: (1) intolerable police conduct that (2) induces or instigates the commission of a crime. We agree with the defendant that the conduct of Officer Blank was unlawful as a violation of the Controlled Substances Act. However, we cannot find a causal connection between the acts of the officer and those of the defendant that could be properly characterized as inducement or incitement. The acts were independent of each other, so do not warrant invocation of the entrapment sanction.

To hold as the defendant proposes would have disastrous effects upon undercover police activities, providing the criminal with "conviction insurance". All a potential defendant would have to do

is provide everyone with whom he deals the opportunity to partake of a controlled substance. Should the invitee accept, the criminal is assured a defense even if the subject later turns out to be a government agent. Should he decline, he is not dealt with.

We emphasize, however, that we do not condone or license criminal acts by police officers. Those acts are still subject to criminal sanction in the discretion of the prosecuting attorney.

Affirmed.